CREAM RECORDS, INCORPORATED, Plaintiff-Appellant,

v.

JOS. SCHLITZ BREWING COMPANY, a Wisconsin corporation, and Benton and Bowles Incorporated, a New York corporation, Defendants-Appellees.

No. 83–5713.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1983.

Decided Feb. 25, 1985.

Gerald B. Weiner, Fischbach & Fischbach, Los Angeles, Cal., for plaintiff-appellant.

Anthony Liebig, Lillick, McHose & Charles, Los Angeles, Cal., for defendants-appellees.

Before BROWNING, Chief Judge, WALLACE and NORRIS, Circuit Judges.

PER CURIAM:

Appellant Cream sued appellees alleging that music in a TV commercial prepared by Benton and Bowles to advertise Schlitz beer infringed appellant's copyright on a popular rhythm and blues composition, "The Theme from Shaft."

The jury found infringement. By agreement of the parties the issue of damages was submitted to the court which awarded Cream a total of $17,000. Cream appealed.

## DAMAGES

Schlitz applied to Cream for a one-year license to use the Shaft theme music in its commercial. Cream quoted a fee of $100,000. (Cream conceded at trial, and the district court found, that the market value of such a license was $80,000.) After Schlitz failed to take a license, another manufacturer approached Cream for a license but withdrew when the Schlitz commercial was aired. There was testimony that use of a well-known popular song in a commercial destroys its value to other advertisers for that purpose.

The district court awarded Cream $12,000 in damages for loss of the license fee. The court reasoned that the value of a license for use of the entire song for a year was $80,000, that only a small portion of the song was actually used in the Schlitz commercial, and the reasonable value of a license for use of that portion was 15% of the value of a license to use the entire song.

The only evidence before the court was that unauthorized use of the Shaft theme music in Schlitz's commercial ended Cream's opportunity to license the music for this purpose. There was no evidence that Schlitz sought, or Cream was willing to grant, a license for use of less than the entire copyrighted work, that a license limited to the portion used in the commercial would have had less value, or that use limited to this portion would have had a less devastating effect upon Cream's opportunity to license to another. Since de-

fendants' unauthorized use destroyed the value of the copyrighted work for this purpose, plaintiff was entitled to recover that value as damages. 3 Nimmer, The Law of Copyright, § 14.02 at 14–6 (1984).

## PROFITS

17 U.S.C. § 504(b) (1982) provides that, in addition to actual damages suffered as a result of the infringement, the copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." The statute also defines and allocates the burden of proof, providing, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

*Schlitz.* Cream offered proof that Schlitz's profit on malt liquor for the period during which the infringing commercial was broadcast was $4.876 million. Cream sought to recover $66,800 as the portion of Schlitz's profit attributable to the infringement, arguing that the expenditure for the infringing commercial constituted 13.7% of Schlitz's advertising budget for the year, the infringing music was responsible for 10% of the commercial's advertising power, and, therefore, 1.37% of the profit on malt liquor were attributable to the infringement.

The district court concluded that the infringement "was minimal," consisting principally of a ten-note ostinato, and that the infringing material did not add substantially to the value of the commercial. The court also concluded, however, that the commercial was successful, that "it sold some beer," and "that the music had a portion of that." The court continued, "So I have to find some profit of the defendants which is allocable to the infringement, but, as I say, I think it's miniscule. I have interpolated as best I can. They made a

profit of $5 million. One-tenth of 1 percent is $5,000, so I will add that...."

Cream argues that since it established Schlitz's total profits from the sale of malt liquor, the burden was placed on Schlitz to prove any portion of the profits not attributable to the infringement, and since the defendants put on no evidence, Cream was entitled to recover the part of Schlitz's profits it sought. The court's lesser award, Cream argues, was wholly arbitrary, and supported by no evidence in the record.

Defendants respond that Cream failed to establish that any part of the profits from the sale of malt liquor were attributable to the commercial, much less to its infringing portion, and was therefore entitled to no share of the profits at all. One of the court's formal findings, prepared by defendants, might be read as stating that no causal connection had been shown between the infringement and defendants' profits. It is clear from the court's statements, including those quoted above, however, that the court concluded from the jury's verdict and from the evidence that some of the profits from malt liquor sales were in fact attributable to the use of plaintiff's copyrighted music in the commercial. The court determined the share of the profits attributable to the infringing material as best it could and awarded Cream ⅒th of 1% of those profits. Defendants have not cross-appealed the judgment, and may not challenge the determination of causation upon which it rests.

■ We also reject Cream's contention. Although the statute imposes upon the infringer the burden of showing "the elements of profit attributable to factors other than the copyrighted work," 17 U.S.C. § 504(b), nonetheless where it is clear, as it is in this case, that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements. "In cases such as this where an infringer's profits are not entirely due to

the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment." *Orgel v. Clark Boardman Co.,* 301 F.2d 119, 121 (2d Cir.1962). As Learned Hand said in *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 51 (2d Cir.1939), *aff'd,* 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940):

> But we are resolved to avoid the one certainly unjust course of giving the plaintiffs everything, because the defendants cannot with certainty compute their own share. In cases where plaintiffs fail to prove their damages exactly, we often make the best estimate we can, even though it is really no more than a guess (*Pieczonka v. Pullman Co.,* 2 Cir., 102 F.2d 432, 434), and under the guise of resolving all doubts against the defendants we will not deny the one fact that stands undoubted.

■ By claiming only 1.37% of Schlitz's malt liquor profits, Cream recognizes the impropriety of awarding Cream all of Schlitz's profits on a record that reflects beyond argument that most of these profits were attributable to elements other than the infringement. As to the amount of profits attributable to the infringing material, "what is required is . . . only a reasonable approximation," *Sheldon v. Metro-Goldwyn Pictures Corp.,* 309 U.S. at 408, 60 S.Ct. at 688; *see also Twentieth Century-Fox Film Corp. v. Stonesifer,* 140 F.2d 579, 583–84 (9th Cir.1944); *MCA, Inc. v. Wilson,* 677 F.2d 180, 186 (2d Cir.1981), and Cream's calculation is in the end no less speculative than that of the court. The disparity between the amount sought by Cream and the amount awarded by the court appears to rest not so much upon a difference in methods of calculation as upon a disagreement as to the extent to which the commercial infringed upon the copyright and the importance of the copyrighted material to the effectiveness of the commercial. These were determinations for the district court to make.

The parties agreed that the issue of damages and profits would be tried to the court. The jury's verdict did not expressly determine the degree to which the commercial infringed upon Cream's copyright. The court's factual findings, though perhaps unfavorable to Cream, do not conflict with the general verdict. *Cf. Blake v. Hall,* 668 F.2d 52, 54 (1st Cir.1981).

■ *Benton.* Cream claimed all of Benton's profit from the TV commercial; the district court awarded none at all. In announcing its judgment the court initially overlooked the claim against Benton. When alerted to the omission the court said, "I will somehow incorporate that into the profit that I awarded with respect to the company. I can't conceive of an award of more than the amount I gave. You can find Benton and Bowles' profit in there by reducing the amount of profit of the beer company."

Obviously it would be improper to assume the profits of the advertising company would be subsumed in the profits of the firm hiring it, if that was the court's intention. Indeed, the profits of the advertising firm were necessarily excluded from the award against the hiring company, since, under § 504(b), Schlitz must be allowed to deduct the monies paid to the advertising firm in calculating its profits.

To avoid unjust enrichment of Benton as a result of its unlawful use of Cream's copyrighted music, the district court must assess a separate award of damages against Benton by making a reasonable approximation of the portion of Benton's profits due to the use of the infringing music.

Plaintiff is awarded costs on appeal including reasonable attorney's fees in an amount to be determined by the district court.

Reversed and remanded for proceedings not inconsistent with this opinion.